1

2

3

4

5

6

7

8                          IN THE UNITED STATES DISTRICT COURT

9                          FOR THE EASTERN DISTRICT OF CALIFORNIA

10   KET HAWKINS,

11                 Petitioner,              No. CIV S-01-1549 FCD JFM P

12          vs.

13   ERNIE ROE, Warden, et al.,

14                 Respondents.             <u>FINDINGS AND RECOMMENDATIONS</u>

15   _____/

16          Petitioner is a former state prisoner proceeding pro se with an application for a

17   writ of habeas corpus pursuant to 28 U.S.C. § 2254.  Petitioner challenges his 1999 conviction on

18   charges of kidnaping, felony false imprisonment, and misdemeanor assault.  Petitioner raises

19   claims of prosecutorial misconduct and ineffective assistance of trial counsel.  Upon careful

20   consideration of the record and the applicable law, the undersigned will recommend that

21   petitioner's application for habeas corpus relief be denied.

22                    PROCEDURAL AND FACTUAL BACKGROUND[1]

23          [Petitioner] was charged by an amended information with two
            counts (count 1 and 2) of sexual battery (Pen. Code, § 243.4, subd.

24   _____

25          [1]  The facts are taken from the opinion of the California Court of Appeal for the Third
     Appellate District in <u>People v. Hawkins</u>, No. C032945 (January 3, 2001) (hereinafter Opinion), a
26   copy of which is attached as Exhibit B to Respondents' Answer, filed March 11, 2002.

                                              1

(a))[2]; two counts of false imprisonment (§ 236), one of which occurred at his residence (count 3) and one of which occurred in his car (count 5); one count (count 4) of kidnapping (§ 207, subd. (a)); and one count (count 6) of assault with intent to rape (§ 220). The case proceeded to a jury trial, and was consolidated with a hearing on an alleged probation violation.[3]

At trial, the following evidence was adduced:

The victim had pulled into a gas station because of car trouble. The [petitioner] offered to have her car towed to one of his auto repair shops. The victim thereafter got into [petitioner]'s car, a Lexus, in part to get out of the heat and in part because she understood that [petitioner] would drive her to the repair shop.

On their way, [petitioner] and the victim stopped at an AM/PM store, where [petitioner] purchased alcoholic beverages for both of them. The victim picked out two bottles of St. Ides, and [petitioner] selected some wine coolers.

[Petitioner] then told the victim that he needed to take her to his house so that he could attend to a matter. Once there, [petitioner] showed the victim his swimming pool, but she declined his invitation to go swimming because she did not have a bathing suit. He next invited her to view the closet that he had built in his bedroom. Once she entered the bedroom, he asked her to pose on his bed for a photograph. She declined, became uncomfortable, went into the living room, and asked to leave.

Meanwhile, [petitioner] began to massage the victim's shoulders and back with baby oil. Becoming afraid, the victim told him to stop. [Petitioner] pulled down her bra strap; the victim tried to get up but slipped; then [petitioner] pinned her down on the couch and pulled her bra and her tank top down. As he touched and kissed one of her breasts, she thought he was going to rape her. She hit him, told him that he would not get away with it, and said that she had been raped before.

The victim then repeatedly tried to leave, but [petitioner] would not permit her, yanking her back into the house on one occasion. At one point, however, [petitioner] said that he wanted her to leave, grabbed her, and pushed her into the garage.

After they were in his car, [petitioner] "yelled" at her and said that she had two choices: he would drive her to the police or to the

---

[2]  Unless designated otherwise, all further statutory references are to the Penal Code.

[3]  At the time of these offenses, [Petitioner] was on probation for spousal abuse (§ 273.5) in case no. 97F04857.

2

repair shop, whichever she preferred; she asked to go to the police. Instead, he drove in a different direction. She tried to escape from the moving car, but he kept locking it with his power door locks. Finally, she succeeded in jumping out of the car, ran in front of a passing van, and forced it to stop and pick her up. The van took her to an AM/PM market where a group of California Highway Patrol officers was gathered in the parking lot. She told the officers what had happened to her.

Meanwhile, [petitioner] arrived at the same market. One of the officers testified that [petitioner] related that "he had given a lady a ride off the freeway, that he finally took the lady to his house and they got into some kind of altercation and he wanted to . . . bring her to us . . . because he had some other problems."

[Petitioner] testified at trial that the victim had been receptive to his advances until he informed her that the repair shop had determined that her car was not worth fixing. At that point, he claims, she became angry and accused him of trying to rape her.

Nonetheless, [petitioner] acknowledged a number of facts that were consistent with the victim's version: that he invited the victim to swim in his pool and suggested that she swim in her "bra and panties," that she declined his offer to take her picture, that he began to massage her shoulders (but he denies touching her breast or holding her down), that her bra strap came down, that she accused him of intending to rape her and stated that she had been raped before ([petitioner] says that she told him that she had been raped by three men), that the victim asked to go to the police station (but changed her mind), and that the victim jumped out of the car and flagged down another car.

The jury returned guilty verdicts for kidnapping (count 4), one count of false imprisonment while the victim was in [petitioner]'s car (count 5), and misdemeanor assault (§ 240) – the lesser included offense of count 6.[4] The jury also reported that it was deadlocked on counts 1, 2, and 3 (two counts of sexual battery and one count of false imprisonment at [petitioner]'s residence). As a result, the court declared a mistrial as to counts 1, 2, and 3, which were subsequently dismissed in the interest of justice.

[Petitioner] moved for a new trial on the grounds that the prosecutor committed misconduct during [petitioner]'s cross-

---

[4]  The record is in conflict as to whether the jury found [petitioner] guilty as to count 6. The verdict form shows a not guilty verdict, but the court minutes reflect a guilty verdict. [Petitioner]'s brief suggests that [petitioner] was found not guilty of count 6 and only guilty of the lesser included offense of misdemeanor assault. But the People allege that [petitioner] was found guilty of count 6, but was not sentenced on that count because of the guilty verdict on the lesser included offense. Since the parties do not brief this issue, we do not consider it.

examination and during argument by citing to facts not in evidence. The trial court found no prosecutorial misconduct and denied the motion.

[Petitioner] then filed a motion for reconsideration.  The court denied that motion, although this time the court found that the prosecutor had committed misconduct, but that it did not constitute a "miscarriage of justice."

[Petitioner] was sentenced to an aggregate term of five years in prison, composed as follows: five years for the kidnapping conviction; a two-year sentence for false imprisonment, which was stayed pursuant to section 654; a sentence of time served for the misdemeanor assault conviction; and a concurrent sentence of three years for spousal abuse as a result of the probation violation.[5]

(People v. Hawkins, slip op. at 2-3.)

ANALYSIS

I.  Standards for a Writ of Habeas Corpus

Federal habeas corpus relief is not available for any claim decided on the merits in state court proceedings unless the state court's adjudication of the claim:

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

Under section 2254(d)(1), a state court decision is "contrary to" clearly established United States Supreme Court precedents "if it 'applies a rule that contradicts the governing law set forth in [Supreme Court] cases', or if it 'confronts a set of facts that are materially indistinguishable from a decision'" of the  Supreme Court and nevertheless arrives at different result.  Early v. Packer, 573 U.S. 3, 8 (2002) (quoting Williams v. Taylor, 529 U.S. 362, 405-406 (2000)).

---

[5]  The abstract of judgment erroneously records the concurrent sentence for the spousal abuse conviction as a consecutive, but stayed, three-year sentence.

1    Under the "unreasonable application" clause of section 2254(d)(1), a federal

2    habeas court may grant the writ if the state court identifies the correct governing legal principle

3    from the Supreme Court's decisions, but unreasonably applies that principle to the facts of the

4    prisoner's case.  Williams, 529 U.S. at 413.  A federal habeas court "may not issue the writ

5    simply because that court concludes in its independent judgment that the relevant state-court

6    decision applied clearly established federal law erroneously or incorrectly.  Rather, that

7    application must also be unreasonable."  Id. at 412; see also Lockyer v. Andrade, 538 U.S. 63,

8    123 S.Ct. 1166, 1175 (2003) (it is "not enough that a federal habeas court, in its independent

9    review of the legal question, is left with a 'firm conviction' that the state court was 'erroneous.'")

10    The court looks to the last reasoned state court decision as the basis for the state

11    court judgment.  Avila v. Galaza, 297 F.3d 911, 918 (9th Cir. 2002).  Where the state court

12    reaches a decision on the merits but provides no reasoning to support its conclusion, a federal

13    habeas court independently reviews the record to determine whether habeas corpus relief is

14    available under section 2254(d).  Delgado v. Lewis, 223 F.3d 976, 982 (9th Cir. 2000).

15  II.  Petitioner's Claims

16       A.  Prosecutorial Misconduct

17    Petitioner's first claim for relief is that the prosecutor committed misconduct

18    when he questioned appellant about a prior allegation of sexual misconduct involving petitioner's

19    former spouse and then commented on petitioner's answers to those questions during closing

20    argument.  These claims were rejected by the California Court of Appeal on petitioner's direct

21    appeal of his conviction and summarily denied by the California Superior Court on petition for

22    review.  (Answer, Exs. B, E.)  After setting forth the relevant legal standards, the court will

23    analyze both claims of prosecutorial misconduct in turn below.

24       1.  Legal Standards

25    Success on a claim of prosecutorial misconduct requires a showing that the

26    conduct so infected the trial with unfairness as to make the resulting conviction a denial of due

process.  Greer v. Miller, 483 U.S. 756, 765 (1987).  The conduct must be examined to determine

"whether, considered in the context of the entire trial, that conduct appears likely to have affected

the jury's discharge of its duty to judge the evidence fairly."  United States v. Simtob, 901 F.2d

799, 806 (9th Cir. 1990).  Generally, if an error of constitutional magnitude is found, a harmless

error analysis ensues.  Error is considered harmless if, after reviewing the entire trial record, the

court decides that the alleged error did not have a "substantial and injurious effect or influence in

determining the jury's verdict."  Brecht v. Abrahamson, 507 U.S. 619, 638 (1993).  Error is

deemed harmless unless it "is of such a character that its natural effect is to prejudice a litigant's

substantial rights."  Kotteakos v. United States, 328 U.S. 750, 760-761 (1946).

### 2.  Questions on Cross-Examination

Petitioner's first claim is that the prosecutor committed misconduct when he

asked petitioner questions on cross-examination about "a prior allegation of digital penetration."

(Pet. at 5.)  The Court of Appeal explained the background to this claim as follows:

> Before trial, the court granted the prosecution's motion in limine to
> allow the prosecution to introduce [petitioner]'s prior conviction
> for spousal abuse (§ 273.5) for purposes of impeachment and to
> introduce the underlying facts of the assault pursuant to Evidence
> Code section 1108.[6]  Although [petitioner] does not dispute the

---

[6]  Evidence Code section 1108 provides as follows:

"(a) In a criminal action in which the defendant is accused of a
sexual offense, evidence of the defendant's commission of another
sexual offense or offenses is not made inadmissible by Section
1101, if the evidence is not inadmissible pursuant to Section 352.
[¶] . . . [¶]

"(d) As used in this section, the following definitions shall apply:

(1) "Sexual offense" means a crime under the law of a state or of
the United States that involved any of the following:

(A) Any conduct proscribed by Section 243.4, 261, 261.5, 262,
264.1, 266c, 269, 286, 288, 288a, 288.2, 288.5, or 289, or
subdivision (b), (c), or (d) of Section 311.2 or Section 311.3,
311.4, 311.10, 311.11, 314, or 647.6, of the Penal Code. . . ."

court's ruling, he challenges the prosecution's inquiry during [petitioner]'s cross-examination as to whether [petitioner] digitally penetrated his former spouse during the course of the spousal abuse because "the prosecutor could not have reasonably expected an affirmative response to his question [concerning whether [petitioner] put his fingers into his former wife's vagina]" and thus committed prosecutorial misconduct.

"It is misconduct for a prosecutor to ask a witness a question that implies a fact harmful to a defendant unless the prosecutor has reasonable grounds to anticipate an answer confirming the implied fact or is prepared to prove the fact by other means. [Citation.]" (People v. Price (1991) 1 Cal.4th 324, 481; accord People v. Warren (1988) 45 Cal.3d 471, 480.)  However, "[i]n the absence of prejudice to the fairness of a trial, prosecutor misconduct will not trigger reversal."  (People v. Bolton (1979) 23 Cal.3d 208, 214.)

The prosecution's challenged questioning of [petitioner] was as follows:

"Q.  You were convicted in 1998 of felony spousal abuse, correct?

"A.  Correct.

"Q.  As part of that case, you actually digitally penetrated and sexually assaulted –

"MR. BROWN: Your Honor, may we approach, please?

"THE COURT: Yes.

            (Discussion at bench)

"MR. BROWN: Thank you, your Honor.

THE COURT: Uh-huh.

"(By Mr. Sawtelle) Now, as part of that case –

"MR. SAWTELLE: I'll go ahead and ask the question again.

"Q.  (By Mr. Sawtelle) – the victim was [your former spouse], correct?

"A.  Um, yes.

"Q.  As part of that case, you went into her house – at your son's house, correct, forced your way in through the door, you took her

into the back room, chased her in the back room, you ripped her underwear off and you digitally penetrated her, correct?

"MR. BROWN: That's not a question, your Honor.

"THE COURT: I'll sustain it based on compound.

"Q.  (By Mr. Sawtelle): Did you go to your wife's, or at the time, your ex-wife['s] . . . house, on May 1st, 1997?

"A.  Did I go to her house?

"Q.  Yes . . . .

"Q.  Did you force your way in through the door?

"A.  No, I didn't.

"Q.  Did you push her to the ground?

"A.  No, I didn't.

"Q.  Did you strike her?

"A.  No, I didn't.

"Q.  Did you rip her underwear off?

"A.  Not intentionally.

"Q.  Did you rip her underwear off?

"A.  No.

"Q.  Did her underwear get removed –

"A.  Yes.

"Q.  – accidentally?

"A.  No.  We – she – yes . . . .

"Q.  Did you put your fingers into her vagina?

"A.  No, I didn't.

    "She never –

"Q.  Did you place your finger or your hands on her vagina?

"A.  No, I didn't.

8

1
2
       "Q.  Were you charged with sexual assault and digital penetration on [your former spouse]?

3
       "A.  Yes, I was."

4
(Opinion at 6-9.)

5
       The California Court of Appeal found that the prosecutor had not committed

6
misconduct when he asked petitioner the questions set forth above because the trial court had

7
granted his motion in limine to inquire about the facts surrounding petitioner's prior conviction

8
of spousal abuse, and had thereby given him permission to ask these questions.  The court

9
concluded that "it is not prosecutorial misconduct to ask judicially authorized questions."  (Id. at

10
10.)[7]  Even assuming arguendo that the prosecutor's questions were improper, the appellate court

11
found that petitioner did not suffer prejudice.  The court reasoned as follows:

12
13
14
15
16
17
18
19
20
21
22
23
       First, [petitioner] denied any digital penetration and there was no evidence before the jury of such penetration.  Second, [petitioner] did admit the spousal abuse conviction, and the inquiry of digital penetration would not appear to have influenced the jury separately from knowledge of that conviction, particularly in light of the fact that the jury deadlocked on the arguably similar sexual battery counts and only found [petitioner] guilty of kidnapping, false imprisonment of the victim in his car, and misdemeanor assault.  Third, on three occasions, the trial court admonished the jury that counsel's statements were not evidence, first after jury selection, second during the court's charge to the jury, and third during the prosecution's closing argument after the prosecution stated that [petitioner] was charged with sexual assault in 1997.  Thus, at the precise point during the prosecution's closing argument when the prosecution referred to the sexual assault charges, the jury was reminded that the prosecution's questions did not constitute evidence.  And finally, the evidence supporting the convictions was strong and could not have been influenced by a question that was denied by the [petitioner].  Specifically, [petitioner] admitted that the victim demanded to go to the police while he was driving her, that she tried to get out of his car and ultimately jumped out of it, and that she flagged down a car.  This admitted conduct is hardly the action of someone not held against her will.  And an

24
25
26
    [7]  On petition for rehearing, the Court of Appeal modified its opinion to include several footnotes.  (See Ex. G to Answer at 1-4.)  However, the court's ultimate conclusion that the prosecutor did not commit misconduct when he questioned petitioner about details of the spousal abuse conviction remained unchanged.  (Id.)

independent witness confirmed the victim's testimony that she flagged down his van.

Together, these reasons demonstrate that the mere asking of a question about digital penetration that the [petitioner] denied and which question the jury was reminded was not evidence – all in the context of a strong case in support of the jury's findings of guilt – did not affect the verdicts.  Whether or not <u>Chapman v. California</u> (1967) 386 U.S. 18, 24 [17 L.Ed. 2d 705, 710] is the standard of review here – which the parties dispute – it is certain that a reasonable jury would have reached the same result, even in the absence of the prosecution's inquiry whether [petitioner] had digitally penetrated his former spouse.[8]

(Opinion at 11-12, as modified by order filed January 31, 2001 (filed as Exhibit G to the Answer)).

Petitioner argues that the prosecutor's questions, described above, constituted misconduct because the prosecutor had no intention and no ability to prove that petitioner

---

[8]  In his petition for rehearing, [petitioner] takes issue with this Court's reasons for finding no prejudice on several different grounds.  First, he correctly observes that his denial of the charge of digital penetration alone does not avoid prejudice from the challenged questions.  However, his denial, in combination with the other factors that we cite, supports our conclusion that the prosecutor's questions about digital penetration did not affect the verdicts.

Second, [petitioner] argues that his admission of the spousal abuse conviction did not mitigate the impact of the question concerning digital penetration because "[s]exual assaults are a different animal than non-sexual assaults.'  But here, the spousal abuse was of a sexual nature in light of [petitioner]'s admission that he tore – albeit accidentally – his former spouse's underwear and that the underwear was removed, albeit "accidentally."  We conclude that the questions concerning digital penetration could not have had any impact independent of [petitioner]'s evasive admissions concerning the circumstances surrounding his admitted spousal abuse conviction.

Third, [petitioner] contends that the evidence supporting his conviction was not strong (in contrast with our conclusion that it was), and argues that "[t]his was a true he-said-she-said case with a victim who was not without credibility problems."  Admittedly, much of the evidence in this case came from the testimony of the [petitioner] or the victim.  But what [petitioner] overlooks is that he himself admits to facts that are not consistent with his version of events, such as the fact that the victim demanded that he take her to the police and that she ultimately had to jump out of his car – facts that corroborate the victim's story, and behavior that is otherwise inexplicable in the context of the [petitioner]'s story.  Further, the jury was fully able to assess the credibility of the [petitioner] and the victim.  The prosecutor's questions concerning [petitioner]'s digital penetration of his former spouse did not affect the jury's verdicts of kidnapping, false imprisonment, and assault of the victim in even the slightest fashion in light of the admissible evidence before the jury and its credibility determination of the [petitioner]'s and the victim's testimony.

1    digitally penetrated his wife in connection with the charge of spousal abuse.  He also argues that

2    the misconduct was prejudicial because the case was close and involved a credibility contest

3    between petitioner and a victim who was intoxicated and had reason to falsely accuse him.

4            Even assuming arguendo that the prosecutor committed misconduct when he

5    cross-examined petitioner about details of his conduct in the spousal abuse case, the state court's

6    opinion that petitioner did not suffer prejudice is not contrary to federal law and should not be set

7    aside.[9]  For the reasons explained by the state appellate court, the prosecutor's conduct could not

8    have had a "substantial and injurious effect or influence in determining the jury's verdict."

9    Notwithstanding the victim's alleged credibility problems, in light of petitioner's testimony

10   admitting his conviction for spousal abuse and corroborating many of the critical facts of the

11   victim's version of events, the prosecutor's questions suggesting that petitioner may have

12   digitally penetrated his wife in connection with his conviction for spousal abuse, a suggestion

13   which petitioner denied, were not prejudicial.  This is particularly true in light of the verdict of

14   _____

15        [9]  The state appellate court analyzed harmless error under Chapman, which is the appropriate standard on direct review.  Chapman v. California, 386 U.S. 18, 24 (1967).  Prior to

16   the passage of the AEDPA, federal habeas courts reviewed state determinations of harmless error pursuant to Brecht, with the inquiry being whether an error "'had substantial and injurious effect

17   or influence in determining the jury's verdict.'"  Brecht v. Abrahamson, 507 U.S. 619, 637 (1993) (quoting Kotteakos v. United States, 328 U.S. 750, 776 (1946)).  After AEDPA, it is an open

18   question whether a federal habeas court analyzing a state court's harmless error finding should continue to apply Brecht or determine instead whether the state court's decision was "contrary to,

     or involved an unreasonable application of" Chapman.  28 U.S.C. § 2254(d)(1).  See e.g.
19   Mitchell v. Esparza, 540 U.S. 12 (2003) (per curiam) (Supreme Court not applying Brecht in examining the harmlessness of constitutional errors on collateral review where the state explicitly

20   adjudicated a federal claim on Chapman harmless error grounds); Medina v. Hornung, 386 F.3d 872, 878 (9th Cir. 2004) (upholding state court's harmless error analysis under Chapman without

21   referring to or applying Brecht); Picazo v. Alameida, 366 F.3d 971 (9th Cir. 2004) (applying Brecht while observing that the Supreme Court in Esparza neither mentioned nor overruled

22   Brecht and its progeny.  See also Saiz v. Burnett, 296 F.3d 1008, 1012-13 (10th Cir. 2002) (holding that if the state court correctly applied Chapman, federal courts do not apply Brecht

23   unless the state court's Chapman analysis violated AEDPA); Noble v. Kelly, 246 F.3d 93, 101 n.5 (2d Cir. 2001) (noting open question where state appellate court explicitly reviewed error for

24   harmlessness); Whitmore v. Kemna, 213 F.3d 431, 433 (8th Cir. 2000) (expressing doubt as to whether Brecht survived AEDPA at all, but declining to decide the issue); Anderson v. Cowan,

25   227 F.3d 893, 898 n.3 (7th Cir. 2000) (noting the issue but declining to decide it).  Because this court concludes the state trial court's error in this case was harmless under both possible

26   standards of review, the court will decline to decide which standard should govern.

acquittal on the sexual battery counts against petitioner.  Accordingly, petitioner is not entitled to

relief on this claim.

### 3.  Closing Argument

Petitioner also claims that the prosecutor's closing argument to the jury

"concerning [petitioner's] negative answers" to the cross-examination questions related above

constituted prosecutorial misconduct.  (Pet. at 5.)  Petitioner does not explain or elaborate on this

claim any further in the points and authorities attached to the petition or in the traverse.

Petitioner's vague and unsupported claim in this regard does not warrant habeas relief.  See Jones

v. Gomez, 66 F.3d 199, 204 (9th Cir. 1995) (quoting James v. Borg, 24 F.3d 20, 26 (9th Cir.

1994)) ("'[c]onclusory allegations which are not supported by a statement of specific facts do not

warrant habeas relief'").

The court notes that on direct appeal, petitioner raised several claims of

prosecutorial misconduct during closing argument.  In one of those claims, petitioner argued that

the prosecutor improperly commented on petitioner's responses to cross-examination questions

about the charge of spousal abuse.  He specifically challenged the following argument:

> "And [[petitioner] is] impeached not only with the '87 case, the '97
> case.  Got an answer for everything.  Got an answer for everything
> that happened. [¶] '97 case.  Oh, yeah.  Yeah, I was charged.
> That's right, I was charged with the sexual assault in that case, too,
> but didn't happen . . . .  I asked him, well, did you go in her house?
> [¶] Did you rip her underwear off? [¶] No.  No."

(Opinion at 16-17.)  Petitioner contended that this argument

> "[left] no doubt as to the prosecutor's message: his office after
> careful review believed [[petitioner]] committed the sexual assault
> in 1997 'too.' [[Petitioner's]] denial of the allegation should be
> discounted – he's a 'con man' who has an 'answer for everything.'
> Conclusion: he committed the sexual assault in 1997 and his denial
> in front of the jury should be discounted."

(Id. at 17.)

/////

1        The California Court of Appeal denied this claim on the grounds that the

2  prosecutor's comments were fair comment on evidence, supplied by petitioner himself on cross-

3  examination, that he was charged with sexual assault and that he had removed his ex-wife's

4  underwear, albeit accidentally.  The court also concluded that even if the prosecutor's comments

5  could be construed as referring to the purported digital penetration of petitioner's ex-wife, they

6  were not prejudicial in light of the trial court's admonishment to the jury that "questions are not

7  evidence."  (Id. at 18.)

8        Assuming arguendo that petitioner is making the same claim in this court as the

9  claim he made on direct appeal, it should be denied.  In order to determine whether a prosecutor

10  engaged in misconduct during closing argument, it is necessary to examine the entire proceedings

11  and place the prosecutor's remarks in context.  See United States v. Robinson, 485 U.S. 25, 33

12  (1988); Donnelly v. DeChristoforo, 416 U.S. 637, 647 (1974) ("[A] court should not lightly infer

13  that a prosecutor intends an ambiguous remark to have its most damaging meaning or that a jury,

14  sitting through lengthy exhortation, will draw that meaning from the plethora of less damaging

15  interpretations.").  In fashioning closing arguments, prosecutors are allowed "reasonably wide

16  latitude."  United States v. Birges, 723 F.2d 666, 671-72 (9th Cir. 1984).  Although it is improper

17  to base closing arguments upon evidence not in the record, prosecutors are free to argue

18  "reasonable inferences from the evidence."  United States v. Gray, 876 F.2d 1411, 1417 (9th Cir.

19  1989).  See also Ducket v. Godinez, 67 F.3d 734, 742 (9th Cir. 1995).  Prompt and effective

20  action by the trial court may neutralize any damage by admonition to counsel or by appropriate

21  curative instructions to the jury.  See, e.g. United States v. Freter, 31 F.3d 783, 787 (1994);

22  United States v. Mikka, 586 F.2d 152, 155-56 (9th Cir. 1978).

23        This court concludes that the prosecutor did not commit misconduct by virtue of

24  the challenged closing argument.  As explained by the state appellate court, the prosecutor's

25  remarks were a fair comment on evidence provided by petitioner on cross-examination.  Even

26  assuming arguendo that the prosecutor's remarks constituted misconduct, petitioner has failed to

1  demonstrate prejudice.  In light of the strength of the government's case and the jury admonition

2  given by the trial court, the prosecutor's comments did not render petitioner's trial fundamentally

3  unfair.  Accordingly, petitioner is not entitled to relief on this claim.

4        B.  Ineffective Assistance of Counsel

5        Petitioner's second claim for relief is that he received constitutionally ineffective

6  assistance of counsel through numerous errors of counsel.  Specifically, petitioner alleges that his

7  trial counsel: (1) failed to move for a dismissal of the kidnapping charge against petitioner on the

8  grounds of insufficient evidence; (2) failed to call several defense witnesses to the stand; (3)

9  failed to "properly investigate;" (4) did not sufficiently prepare the toxicologist for his trial

10  testimony; (5) failed to prepare for trial; (6) failed to adequately diagram the crime scene and

11  "route of travel;" (7) failed to subpoena videotapes at the AM/PM store to show that petitioner

12  arrived at the store before the victim did; (8) failed to file a timely notice of appeal; (9) failed to

13  impeach the victim with respect to her testimony that she and petitioner watched the Playboy

14  channel at petitioner's residence and that petitioner's automobile had power locks; and (10)

15  failed to "adequately rehabilitate petitioner's testimony."  (Pet. at 5, 25-27, 37.)  These claims

16  were rejected by the California Superior Court on petitioner's application for a writ of habeas

17  corpus in a reasoned decision dated June 9, 2000, and summarily denied by the California

18  Supreme Court by order dated June 27, 2001.  This court will analyze petitioner's claims in turn

19  below after setting forth the applicable legal principles.

20        1.  Legal Standards

21        In order to prevail on a claim of ineffective assistance of counsel, petitioner must

22  show two things: an unreasonable error and prejudice flowing from that error.  First petitioner

23  must show that, considering all the circumstances, counsel's performance fell below an objective

24  standard of reasonableness.  Strickland v. Washington, 466 U.S. 688 (1984).  The court must

25  determine whether in light of all the circumstances, the identified acts or omissions were outside

26  the wide range of professional competent assistance.  Id. at 690.  "Review of counsel's

1 performance is highly deferential and there is a strong presumption that counsel's conduct fell

2 within the wide range of reasonable representation." United States v. Ferreira-Alameda, 815

3 F.2d 1251, 1253 (9th Cir. 1986).

4 Second, petitioner must prove prejudice. Strickland at 693. To demonstrate

5 prejudice, petitioner must show that "there is a reasonable probability that, but for counsel's

6 unprofessional errors, the result of the proceeding would have been different." Id. at 694. A

7 reasonable probability is "a probability sufficient to undermine confidence in the outcome." Id.

8 The focus of the prejudice analysis is on "whether counsel's deficient performance renders the

9 result of the trial unreliable or the proceeding fundamentally unfair." Lockhart v. Fretwell, 506

10 U.S. 364, 372 (1993).

11 2. Failure to File a Motion to Dismiss

12 Petitioner first claims that his trial counsel rendered ineffective assistance because

13 he failed to file a motion to dismiss the kidnapping charge against him on the grounds of

14 insufficient evidence. This claim lacks merit and should be denied.

15 An attorney's failure to make a meritless objection or motion does not constitute

16 ineffective assistance of counsel. Jones v. Smith, 231 F.3d 1227, 1239 n.8 (9th Cir. 2000) (citing

17 Boag v. Raines, 769 F.2d 1341, 1344 (9th Cir. 1985)). See also Rupe v. Wood, 93 F.3d 1434,

18 1445 (9th Cir. 1996) ("the failure to take a futile action can never be deficient performance").

19 "To show prejudice under Strickland resulting from the failure to file a motion, a defendant must

20 show that (1) had his counsel filed the motion, it is reasonable that the trial court would have

21 granted it as meritorious, and (2) had the motion been granted, it is reasonable that there would

22 have been an outcome more favorable to him." Wilson v. Henry, 185 F.3d 986, 990 (9th Cir.

23 1999) (citing Kimmelman, 477 U.S. at 373-74). Petitioner has failed to demonstrate that a

24 motion to suppress would have been granted as meritorious.

25 Petitioner claimed in his petition for writ of habeas corpus to the California

26 Superior Court that there was insufficient evidence to support his conviction for kidnapping. The

15

Superior Court rejected that claim on the grounds that: "(1) procedurally, it is an issue that should be presented on appeal; and (2) substantively, it is refuted by extensive evidence to the contrary adduced at trial."  (Answer, Ex. H at 5.)  Pursuant to California law, kidnapping is "a substantial movement of a person accomplished by force or fear."  People v. Cortez, 6 Cal. App. 4th 1202, 1209 (1992).  See also California Penal Code § 207(a).  There was evidence introduced at petitioner's trial, which has been summarized above, demonstrating that petitioner moved the victim a substantial distance in his car by the use of force or fear, causing her to jump out of a moving vehicle and summon help.  In light of those facts, counsel's decision not to file a motion to dismiss was neither unreasonable nor outside the "wide range" of professional legal assistance.  Accordingly, petitioner is not entitled to relief on this claim.

### 3.  Failure to Call Defense Witnesses

Petitioner next claims that his trial attorney rendered ineffective assistance because of his failure to call four defense witnesses.[10]  Those witnesses, and the testimony petitioner believes they could have provided, are described by petitioner as follows:

> 1) Karl Ortega The Petitioner's cousin.  Petitioner placed a cellular call to Karl Ortega in route after meeting Ms. Santos.  Karl Ortega asked both Ms. Santos and Petitioner to attend a birthday party at his home.  Karl Ortega would have testified to the casual demeanor of the victim and the defendant during the ride to the house.

> 2) Tom and Kami (next door neighbors) These two neighbors were seated on the front porch of their home when the Petitioner and Ms. Santos arrived.  They remained on the porch until Ms. Santos and the Petitioner left the house.  They would have testified that they heard no screams, or other sounds of distress.  Neither did they witness a struggle or any indication that the victim was being forced into the automobile.

> 3) Hadessah Wells: she could have refuted the prosecutor's false allegation that the May 1, 1997 § 237.5 felony spousal abuse included digital penetration.  Further, Hadessah Wells enjoyed spousal privilege pursuant to Evidence Code § 970-971.  The prosecutorial threats to call Haddessah Wells as an impeachment

---

[10]  Petitioner's exact claim is that his trial counsel improperly failed to call eight witnesses, but he describes only four witnesses. (See Pet. at 25-26.)

1

witness, during the cross examination of the Petitioner, were
without foundation.  The Prosecutor elicited § 273.5 felony spousal
2
abuse information with a "good faith" promise that he would
subpoena the wife.  This was not done and Clarence Brown did not
3
vigorously pursue this obvious example of prosecutorial
misconduct.

4

5  (Pet. at 25-26.)

6        The California Superior Court rejected these claims with the following reasoning:

7        Petitioner has not pled a prima facie case for relief in support of
any of these claims.  He states that his cousin, Ortega, would have
8        testified as to the casual demeanor of himself and the victim after
the incident during phone conversations.  But he has failed to
9        provide a declaration from Ortega in which Ortega states that he
was willing to provide such testimony at trial, if asked.
10       Furthermore, even if he had supplied the court with a declaration,
the evidence does little to exonerate him.  As already noted, it was
11       established at trial that the victim forcible [sic] exited the vehicle,
ran into traffic, and stopped a van in order to escape from him.
12       Accordingly, his attorney did not render ineffective assistance by
failing to produce him as a witness.

13

14       The court should also reject his claim in regard to the alleged
testimony of his neighbors, Tom and Kami.  He states that they
15       would have refuted the victim's testimony that they struggled upon
their departure from his residence.  They saw nothing that would
16       have indicated that he forced them into his vehicle.  Again,
petitioner has not provided the court with a declaration from them
17       in which they state that they were willing to provide such
testimony at trial, if asked.  In the absence of such a declaration,
18       the court declines to issue an order to show cause.

19       In regard to his attorney's failure to produce his wife as a witness,
petitioner emphasizes that the prosecution impeached him by
20       falsely stating that he had digitally penetrated her during a previous
instance of spousal abuse.  She would have refuted the allegation.
21       He has already challenged the prosecution's impeachment of him
on this basis on appeal.  (AOB 13-19.)  Here, he argues that his
22       attorney should have refuted the prosecution's contention by
producing his wife as a witness at trial.

23       An examination of one of his in limine motions reveals that she
would not have been an especially good witness for him.  After the
24       incident, she initially told the police that there was no penetration.
She later told the police to the contrary, and, finally, at his trial for
25       spousal abuse, denied it.  (CT 285-288, 494.)  His attorney may
have therefore reasonably concluded that she may not have been an
26       especially good witness.  Indeed, he could have logically concluded

that her testimony would have persuaded the jury that he did
actually sexually assault her.  There was therefore a rational,
tactical reason for his failure to call her.  (<u>Strickland v. United
States</u>, <u>supra</u>; <u>People v. Ledesma</u>, <u>supra</u>.)

Answer, Ex. H at 4.)

The decision of the California Superior Court rejecting these claims is not

contrary to or an unreasonable application of <u>Strickland</u> and should not be set aside.  Petitioner

has failed to demonstrate that any of the above witnesses he describes would have agreed to

testify at trial to the facts suggested by petitioner.  <u>See</u> <u>United States v. Harden</u>, 846 F.2d 1229,

1231-32 (9th Cir. 1988) (no ineffective assistance because of counsel's failure to call a witness

where, among other things, there was no evidence in the record that the witness would testify).

Further, even assuming that these witnesses would have been willing to testify to the facts

described by petitioner, counsel's failure to call them did not result in prejudice.  Testimony from

Ortega that petitioner and the victim had a "casual demeanor" in the car en route to his house

would have been irrelevant to the charge that petitioner kidnapped and assaulted the victim some

time after they arrived at his house.  Similarly, testimony that petitioner's neighbors did not hear

or see anything unusual when petitioner and the victim entered and exited his house would not

necessarily have been inconsistent with the victim's testimony at trial and would have had no

bearing on whether petitioner assaulted the victim in his house or forced her to remain in his

vehicle after it had left his residence.

With regard to petitioner's former wife, petitioner has failed to show that his

attorney's decision not to call her as a witness was outside the wide range of reasonable

professional assistance.  As explained by the Superior Court, this witness had changed her story

several times in the past with respect to the details of the spousal abuse; therefore, counsel may

have determined that she would be a poor witness for the defense.  Further, counsel may have

determined, for tactical reasons, not to highlight petitioner's conviction for spousal abuse.  <u>See</u>

<u>Furman v. Wood</u>, 190 F.3d 1002, 1007 (9th Cir. 1999) (citing <u>Strickland</u>, 466 U.S. at 687)

1  ("Counsel's tactical decisions are 'virtually unchallengeable'").  Petitioner is not entitled to relief

2  on his claim that counsel rendered ineffective assistance when he failed to call four defense

3  witnesses.

4                     4.  <u>Failure to Investigate and Prepare</u>

5           Petitioner contends that his trial counsel rendered ineffective assistance because of

6  his failure to "investigate" and "prepare for trial."  (Pet. at 26.)  He states that counsel informed

7  him "there was no money to call witnesses" or "conduct a more complete investigation."  (<u>Id.</u>)

8  He also states that counsel told him he did "not have to put on a defense because there was

9  insufficient evidence to support the charges."  (<u>Id.</u>)

10          Petitioner's vague claims in this regard are insufficient to establish prejudice.  He

11  has failed to demonstrate how further investigation would have changed the outcome of this case.

12  <u>See</u> <u>Villafuerte v. Stewart</u>, 111 F.3d 616, 632 (9th Cir. 1997) (petitioner's ineffective assistance

13  claim denied where he presented no evidence concerning what counsel would have found had he

14  investigated further, or what lengthier preparation would have accomplished).  In addition,

15  contrary to petitioner's claim, counsel did "put on a defense."  Petitioner testified on his own

16  behalf and called a toxicologist in support of his argument that the victim was intoxicated during

17  the events in question.  (Reporter's Transcript on Appeal (RT) at 424, 752.)  Petitioner has failed

18  to explain how a different defense would have resulted in a better outcome.  In this regard, the

19  court notes that three of the counts against petitioner were dismissed because the jury was unable

20  to reach a verdict on those counts.  Petitioner has failed to show that counsel's failure to devote

21  more time to this case rendered the result of the trial unreliable or the proceeding fundamentally

22  unfair.  Accordingly, these claims should be denied.

23                     5.  <u>Failure to Prepare Witness</u>

24          Petitioner next claims that his trial counsel did not sufficiently prepare the

25  toxicologist for his trial testimony.  He specifically challenges testimony "related to the effects of

26  40 ounces of a 6% alcoholic beverage on a 121 lb. woman."  (Pet. at 26.)  He states that the

victim did not weigh as much as she claimed and that, if her weight had been verified, it would

have been apparent that "the effects of the alcohol she consumed would have had a greater

effect." (Id.)

> The California Superior Court rejected this claim with the following reasoning:

> [T]he victim testified that she drank one 20-ounce wine cooler, and
> started a second one. (RT 172.) The toxicologist testified she
> would have had a blood alcohol level of approximately 0.8 after
> drinking the first one. She would have had a level of 0.13 when
> encountering the officers at the AM/PM market after she had
> started the second one. (RT 755-757.) Petitioner argues that his
> opinion was based upon the erroneous assumption that she
> weighed 120 pounds, when, in fact, she weighed substantially less.
> But he has not provided the court with any basis for this statement.
> Furthermore, the jurors would have been able to determine, based
> upon their observation of the victim, if her weight was less than
> described.

(Answer, Ex. H at 3.)

This court also concludes that petitioner's failure to demonstrate that the victim

weighed "substantially less" than 120 pounds undercuts the factual basis for this claim. Without

evidence that the toxicologist's assumptions were incorrect, there is no indication that counsel's

failure to "prepare" this witness prior to his testimony resulted in prejudice. Accordingly, this

claim should be denied.

### 6. Failure to Diagram Crime Scene and Route of Travel

Petitioner's next claim is that his trial counsel rendered ineffective assistance

when he failed to "adequately diagram the alleged crime scene and route of travel." (Pet. at 26.)

He explains that the "route of travel" described by the victim was "more consistent with the

Petitioner's explanation than the victim's" and that "this information could have been used to

impeach the victim's testimony." (Id.)

> The California Superior Court rejected this claim with the following reasoning:

> Petitioner asserts that that [sic] his attorney also rendered
> ineffective assistance by failing to adequately diagram the crime
> scene and the route of travel. If he had done so, he could have

> effectively impeached her credibility.  Even assuming that his
> attorney's performance was deficient, his amorphous allegation
> fails to establish a prima facie case of prejudice.  (Strickland v.
> Washington, supra, 466 U.S. at 697.)

(Answer, Ex. H at 5.)  This court also finds that petitioner's claim in this regard is insufficient to

establish ineffective assistance of counsel.  The claim itself is vague and confusing and petitioner

has failed to demonstrate that counsel's failure to diagram the crime scene rendered his trial

fundamentally unfair.  Accordingly, this claim should be denied.

### 7.  Failure to Subpoena Videotape

Petitioner next claims that his trial counsel rendered ineffective assistance when

he failed to subpoena videotapes at the AM/PM store to show that petitioner arrived at the store

before the victim did.  The California Superior Court rejected this claim as follows:

> As for the third one involving the AM/PM surveillance camera
> tapes, petitioner's contention is wholly without merit.  At trial, it
> was acknowledged that he had arrived at the AM/PM market prior
> to the victim.  (RT 220-222.)  Accordingly, it was not necessary for
> his attorney to subpoena these tapes for this purpose.  He also fails
> to recognize that the urgency of his conduct may well have been
> interpreted by the jury as consciousness of guilt.  If so, additional
> evidence would have just further impaired his defense.

(Answer, Ex. H at 3.)

The Superior Court's conclusion in this regard is not contrary to federal law and

should not be set aside.  As described by the state court, the victim testified that petitioner

reached the AM/PM market before she did.  Counsel's failure to obtain videotape confirming this

fact did not result in prejudice.

### 8.  Failure to File Notice of Appeal

Petitioner's next claim is that his trial attorney rendered ineffective assistance

when he failed to file a notice of appeal.  He states that his appellate counsel filed a notice of

appeal and that petitioner himself filed a supplemental notice of appeal "to insure the

preservation of rights to appeal."  (Pet. at 27.)

/////

21

1    Even assuming arguendo that trial counsel's failure to file a notice of appeal was

2    outside the range of reasonably competent counsel, petitioner has failed to show prejudice.  There

3    is no evidence that petitioner's appeal was impaired in any way because of inaction by trial

4    counsel.  Petitioner's appeal was timely filed and his claims were considered on the merits.

5    Accordingly, petitioner is not entitled to relief on this claim.  Cf. Roe v. Flores-Ortega, 528 U.S.

6    470 (2000) (ineffective assistance of counsel demonstrated where counsel failed to file a notice

7    of appeal, causing the forfeiture of petitioner's right to appeal).

8             9. Failure to Impeach the Victim

9    Petitioner's next claim is that his trial counsel rendered ineffective assistance

10   because he failed to impeach the victim with respect to her testimony that: (1) she and petitioner

11   watched the Playboy channel at petitioner's residence; and (2) she was not able initially to escape

12   from petitioner's vehicle because he activated the interior power locks.  Petitioner states that he

13   did not subscribe to the Playboy channel and that "the Lexius [sic] automobile does not have

14   interior power locks which can restrain the person on the passenger side."  (Pet. at 27.)

15   The California Superior Court rejected this claim with the following reasoning:

16   Petitioner's fourth claim is also without merit.  He states that
Sacramento Cable Company records of his cable services show that

17   he did not subscribe to the Playboy Channel, or any other X-rated
one.  If his attorney had gotten the records, his attorney could have

18   impeached the victim on cross-examination.  Yet he has not
provided this court with copies of these records as an exhibit, even

19   though he should easily be able to obtain them.  In the absence of
these records, the court rejects this claim.

20

21   Lastly, petitioner asserts that his attorney did not impeach the
victim by showing that his Lexus did not have power locks.  Even

22   if true, such impeachment would have had a minimal impact.  She
escaped from him by exiting the vehicle, running into the middle of

23   Martin Luther King Boulevard, waving her arms, and forcing a van
to stop.  The driver of the van, David Sowash, told her to jump into

24   the vehicle.  (RT 215, 375.)  Clearly, evidence of the lack of power
locks in petitioner's Lexus would have done little to dispel the fact

25   that she had to forcibly escape from him.

26   (Answer, Ex. H at 3.)

1        The Superior Court's decision rejecting this claim is a reasonable application of

2 <u>Strickland</u> and should not be set aside.  Evidence that petitioner did not subscribe to the Playboy

3 channel, although it might have called into question the victim's credibility on that point, would

4 not have changed the outcome of this trial, especially in light of the strength of the government's

5 case against petitioner.  <u>See Eggleston v. United States</u>, 798 F.2d 374, 376 (9th Cir.1986)

6 ("ineffective assistance claims based on a duty to investigate must be considered in light of the

7 strength of the government's case").  Further, evidence that the Lexus could not be locked on the

8 passenger side from within would have had little impact in the face of undisputed testimony that

9 the victim bolted out of a moving car to get away from petitioner.  That testimony demonstrates

10 that the victim believed she was being restrained against her will and that she was afraid.

11 Whether or not petitioner tried to lock her door from within is irrelevant.  For these reasons,

12 petitioner has failed to demonstrate prejudice with respect to these claims and they should be

13 denied.

14                10.  <u>Failure to Rehabilitate Petitioner's Testimony</u>

15        Petitioner's final claim of ineffective assistance of trial counsel is directed to

16 counsel's alleged failure to effectively counter the prosecutor's cross-examination questions

17 described above in connection with petitioner's claim of prosecutorial misconduct.  Petitioner

18 argues that counsel failed to "effectively rehabilitate" his testimony on cross-examination.

19 Specifically, he argues that his trial counsel "did very little to rehabilitate the damage done to

20 Petitioner's credibility during cross-examination."  (Pet. at 37.)

21        Petitioner does not specify the exact portion of his testimony that counsel should

22 have "rehabilitated" and fails to explain what counsel should have done to restore petitioner's

23 credibility.  Assuming arguendo that petitioner is challenging counsel's failure to effectively

24 confront the exchange described above in connection with petitioner's claim of prosecutorial

25 misconduct, he has failed to establish that counsel failed to act reasonably.  The record reflects

26 that the prosecutor was permitted by the trial court to ask questions about the facts underlying

1   petitioner's prior conviction for spousal abuse and there is no evidence that petitioner's answers

2   to those questions were false.  Accordingly, there is nothing that petitioner's counsel was

3   required or even able to do.  To the extent that petitioner is challenging trial counsel's failure to

4   call petitioner's former wife as a witness to rebut the prosecutor's insinuation that petitioner

5   digitally penetrated his wife, that claim has been addressed above.  In short, petitioner has failed

6   to demonstrate either that his counsel's performance was outside the wide range of reasonable

7   professional assistance or that petitioner suffered prejudice as a result of counsel's failure to

8   "rehabilitate" his credibility.  Accordingly, this claim should be denied.

9          In accordance with the above, IT IS HEREBY RECOMMENDED that

10  petitioner's application for a writ of habeas corpus be denied.

11          These findings and recommendations are submitted to the United States District

12  Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty

13  days after being served with these findings and recommendations, any party may file written

14  objections with the court and serve a copy on all parties.  Such a document should be captioned

15  "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections

16  shall be served and filed within ten days after service of the objections.  The parties are advised

17  that failure to file objections within the specified time may waive the right to appeal the District

18  Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

19  DATED: June 27, 2005.

20

21

22  UNITED STATES MAGISTRATE JUDGE

23

24

25

26

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26